IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RICARDO JOYA DIAZ, *et al.*, )
)
Plaintiffs, )
)
v. ) Civil Action No. 1:21cv1192 (LO/JFA)
)
RM CONTRACTOR, LLC, )
)
Defendant. )
_____ )

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on a motion for default judgment filed by plaintiffs Ricardo Joya Diaz ("Mr. Joya Diaz") and Diana Joya Diaz ("Ms. Joya Diaz") (collectively "plaintiffs") against defendant RM Contractor, LLC ("RM Contractor" or "defendant"). (Docket no. 8). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

On October 26, 2021, plaintiffs filed this action against defendant alleging violations of the Fair Labor Standards Act ("FLSA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). (Docket no. 1). The Clerk of Court issued a summons for service on defendant on October 27, 2021. (Docket no. 3). A return of service filed on November 9, 2021 indicated that defendant was served on November 8, 2021 when a copy of the summons was left with defendant's registered agent, Oscar Rene Marquez Lopez, at defendant's business address at 16617 Dumfries Road, Dumfries, Virginia 22025. (Docket no. 4). In accordance with Federal Rule of Civil Procedure 12(a), defendant's responsive pleading was due on November 29, 2021,

twenty-one (21) days after service of process. Defendant failed to file a responsive pleading by this date. On January 13, 2022, plaintiffs filed a request for entry of default as to defendant (Docket no. 5), which the Clerk of Court entered on January 27, 2022 (Docket no. 7).

On May 9, 2022, plaintiffs filed a motion for default judgment as to defendant. (Docket no. 8). On May 13, 2022, the court directed plaintiffs to file a notice of hearing on their motion. (Docket no. 10). On May 23, 2022, plaintiffs filed a notice of hearing for Friday, June 17, 2022 at 10:00 a.m. (Docket no. 11). Plaintiffs' motion for default judgment and notice of hearing included certificates of service indicating that they were served by first class mail on defendant's registered agent at defendant's business address. (Docket nos. 8 at 20, 11 at 2). On June 17, 2022, the motion was called in open court, and plaintiffs' counsel appeared telephonically before the undersigned. No one appeared on behalf of defendant.

## Factual Background

The following facts are established by the complaint (Docket no. 1) ("Compl."), and plaintiffs' declarations attached to their motion for default judgment (Docket nos. 8-1, 8-2) ("Ms. Joya Diaz Decl." and "Mr. Joya Diaz Decl."). Plaintiffs are adult residents of Montgomery County, Maryland. (Compl. ¶¶ 1–2). Defendant is a Virginia limited liability company with a principal office in Prince William County, Virginia. (Compl. ¶ 3). During the relevant period, defendant operated as a construction contractor in Virginia, Maryland, and the District of Columbia, and it employed between twenty-five (25) and fifty (50) employees with gross annual receipts exceeding $500,000. (Compl. ¶¶ 4–6).

From December 9, 2020 to February 6, 2021, Mr. Joya Diaz worked for defendant as a painter. (Compl. ¶ 19). Mr. Joya Diaz typically worked Monday through Friday from 7:00 a.m. to 5:00 p.m. (with a one-hour lunch break) and Saturday from 7:00 a.m. to 3:00 p.m. (without a

2

lunch break), for a total of fifty-three (53) hours per week at an hourly rate of $13. (Compl. ¶¶ 20–22). Mr. Joya Diaz alleges that defendant failed to pay him at the time-and-one-half rate required for overtime under the FLSA, and he claims that he is owed $676 in overtime wages. (Compl. ¶¶ 23–24). Mr. Joya Diaz claims that defendant's managers and supervisors admitted knowledge of the overtime law but stated that defendant does not pay premium overtime wages to employees and that Mr. Joya Diaz could "go work someplace else" if he did not like the policy. (Mr. Joya Diaz Decl. ¶ 19).

From October 2020 to February 6, 2021, Ms. Joya Diaz worked for defendant as a painter.[1] (Compl. ¶ 25). Ms. Joya Diaz typically worked Monday through Friday from 7:00 a.m. to 5:00 p.m. (with a one-hour lunch break) and Saturday from 7:00 a.m. to 3:00 p.m. (without a lunch break), for a total of fifty-three (53) hours per week at an hourly rate of $15. (Compl. ¶¶ 26–28). Ms. Joya Diaz alleges that defendant failed to pay her at the time-and-one-half rate required for overtime under the FLSA, and she claims that she is owed $1,657.50 in overtime wages. (Compl. ¶¶ 29–30). Ms. Joya Diaz claims that defendant's managers and supervisors admitted knowledge of the overtime law but stated that defendant does not pay premium overtime wages to employees and that Ms. Joya Diaz could "go work someplace else" if she did not like the policy. (Ms. Joya Diaz Decl. ¶ 19).

Mr. Joya Diaz alleges that defendant terminated his employment on February 6, 2021 because his senior manager, Carlos Humberto Rivas, learned that he is a homosexual man. (Compl. ¶¶ 33–34). Mr. Joya Diaz claims that he performed his job duties well and that defendant terminated his employment immediately after learning that he was in a relationship

---

[1] In her declaration in support of plaintiffs' motion for default judgment, Ms. Joya Diaz indicated that she was employed by defendant for seventeen (17) weeks. (Ms. Joya Diaz Decl. ¶ 13).

3

with another man. (Compl. ¶¶ 36–38). Ms. Joya Diaz alleges that defendant also terminated her employment on February 6, 2021 because she voiced "outrage and protest" after defendant terminated Mr. Joya Diaz because of his sexual orientation. (Compl. ¶¶ 39–40). Ms. Joya Diaz claims that she performed her job duties well and that defendant terminated her employment immediately after she protested and opposed defendant's allegedly unlawful discrimination and termination of Mr. Joya Diaz. (Compl. ¶¶ 45–46).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Based on defendant's failure to file a responsive pleading in a timely manner, the Clerk of Court has entered a default as to defendant. (Docket no. 7).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantage.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter jurisdiction and personal jurisdiction over a defaulting party before it can render a default judgment. This court has subject matter

jurisdiction pursuant to 28 U.S.C. § 1331 because this matter arises under federal law (FLSA, Title VII). This court also has personal jurisdiction over defendant. As established in the complaint, defendant is a Virginia LLC with its principal office located in Prince William County, Virginia. (Compl. ¶ 3). During the relevant period, defendant performed construction and related duties for Virginia customers, and it conducts regular business in Virginia. (Compl. ¶¶ 4, 8). Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) because defendant resides within this district. *See* 28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction").

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendant, and that venue is proper in this court.

## Service

Pursuant to Federal Rule of Civil Procedure 4(h)(1), an unincorporated association may be served by the delivery of a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process. On October 27, 2021, the Clerk of Court issued a summons for service on RM Contractor, LLC. (Docket no. 3). On November 9, 2021, a return of service indicated that RM Contractor was served with the summons on November 8, 2021 when it was left at 16617 Dumfries Road, Dumfries, VA 22025 with Oscar Rene Marquez Lopez, defendant's registered agent. (Docket no. 4). Based on the foregoing, the undersigned recommends a finding that defendant was properly served with the summons and complaint and had notice of this action.

## Grounds for Entry of Default

On January 13, 2022, plaintiffs requested an entry of default as to defendant RM Contractor, LLC. (Docket no. 5). On January 27, 2022, the Clerk of Court entered default as to defendant for failure to plead or otherwise defend. (Docket no. 7). On May 9, 2022, plaintiffs filed a motion for default judgment (Docket no. 8) and accompanying declarations. On March 23, 2022, plaintiffs filed a notice of hearing on their motion for Friday, June 17, 2022. (Docket no. 11). Certificates of service filed with the pleadings confirmed that defendant was served with a copy of each document through its registered agent. (Docket nos. 8 at 20, 11 at 2). No responsive pleadings have been filed, and the time for doing so has expired.

Accordingly, the undersigned recommends a finding that defendant was properly served, it failed to file a responsive pleading in a timely manner, the Clerk of Court entered default as to defendant, and that defendant had notice of these proceedings.

## Liability

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

### I. FLSA Claims

As alleged in the complaint, defendant willfully violated the overtime provisions of the FLSA. (Compl. ¶¶ 66–70).[2] Pursuant to the FLSA, defendant was required to pay plaintiffs overtime pay at a rate not less than one-and-a-half times their regular rate of pay for each hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a). To establish a violation of the FLSA for non-payment of overtime hours, plaintiffs must show that: (1) they were employed

---

[2] These paragraphs appear to be mislabeled in the complaint as ¶¶ 56–60.

6

by defendant; (2) they were engaged in commerce or in the production of goods for commerce; (3) they worked over forty hours per work week; (4) they were not compensated at a rate of 1.5 times their regular rate for each hour worked in excess of forty hours for each work week; and (5) none of the exemptions in 29 U.S.C. § 213 applied to their position. *See* 29 U.S.C. § 207; *Davis v. Food Lion*, 792 F.2d 1274, 1276–77 (4th Cir. 1986).

The facts set forth in the complaint establish that defendant employed plaintiffs and that they were engaged in commerce as defined by 29 U.S.C. § 203(b). During the relevant period, defendant operated as a construction contractor and performed construction and related duties for customers in Virginia, Maryland, and the District of Columbia. (Compl. ¶ 4). Defendant employed Mr. Joya Diaz as a painter from December 9, 2020 to February 6, 2021. (Compl. ¶ 19). Defendant employed Ms. Joya Diaz as a painter from October 2020 to February 6, 2021. (Compl. ¶ 25). Accordingly, defendant was plaintiffs' employer, and plaintiffs were engaged in commerce for purposes of the FLSA during the relevant period.

The facts as alleged in the complaint further establish that defendant failed to pay plaintiffs their overtime wages. Mr. Joya Diaz alleges that he worked about fifty-three (53) hours per week during his employment and that he was paid an hourly rate of $13. (Compl. ¶¶ 20–22). Mr. Joya Diaz claims that defendant failed to pay him at the time-and-one-half rate required by the FLSA for hours worked in excess of forty (40) hours each week. (Compl. ¶ 23). Ms. Joya Diaz alleges that she worked about fifty-three (53) hours per week as well during her employment and that she was paid an hourly rate of $15. (Compl. ¶¶ 26–28). Ms. Joya Diaz likewise claims that defendant failed to pay her overtime. (Compl. ¶ 29). No evidence has been produced to show that any of the exemptions listed in 29 U.S.C. § 213 apply to plaintiffs, and they appear to be covered employees entitled to the protections of the FLSA. *See Darveau v.*

*Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exemption."). For these reasons, the undersigned recommends a finding that plaintiffs have established defendant's failure to pay overtime wages in violation of 29 U.S.C. § 207.

## II.     Title VII Claims

Plaintiffs allege that defendant violated Title VII's prohibitions on gender/sexual orientation discrimination and retaliation when it terminated plaintiffs' employment on February 6, 2021. (Compl. ¶¶ 48–65).

### a.   Defendant's Termination of Mr. Joya Diaz

As alleged in the complaint, defendant violated Title VII when it fired Mr. Joya Diaz because of his identity as a gay man. (Compl. ¶¶ 48–56). In its seminal decision in *Bostock v. Clayton Cnty., Ga.*, the Supreme Court held that an employer violates Title VII's prohibition on sex discrimination when it fires an employee based on that employee's sexual orientation or gender identity. 140 S. Ct. 1731, 1737 (2020) ("An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex."). To prove sexual orientation or gender identity discrimination in violation of Title VII, a plaintiff must establish: (1) membership in a protected class, (2) adequate job performance, (3) the existence of an adverse employment decision, and (4) different treatment of similarly situated individuals outside of the protected class. *See Schwenke v. Ass'n of Writers & Writing Programs*, 510 F. Supp. 3d 331, 335–36 (D. Md. 2021).

Plaintiffs have established defendant's violation of Title VII as to Mr. Joya Diaz. As a gay man, Mr. Joya Diaz is a member of a protected class, and Title VII's protections against sex discrimination extend with equal force to discrimination based on sexual orientation or gender

identity. *See Bostock*, 140 S. Ct. at 1747–48 ("[D]iscrimination based on homosexuality or transgender status necessarily entails discrimination based on sex; the first cannot happen without the second."). Plaintiffs also allege that Mr. Joya Diaz "performed his job duties well and without complaint, write up, or any documented concern from Defendant." (Compl. ¶ 36–37). Plaintiffs have further demonstrated that Mr. Joya Diaz was subject to an adverse employment decision when his employment was terminated on February 6, 2021. (Compl. ¶¶ 33, 38).

As to the final prong, plaintiffs have offered sufficient evidence to establish an inference that defendant terminated Mr. Joya Diaz because he is a gay man. Plaintiffs allege that Mr. Joya Diaz's employment was terminated "immediately (within minutes or, at most, hours) after Defendant learned Mr. Joya Diaz was [a] homosexual male engaging in a homosexual relationship with another male." (Compl. ¶ 38). As noted above, plaintiffs have established that Mr. Joya Diaz performed his job duties well, and defendant, through its failure to appear, has not offered any alternative reason for his termination. Although plaintiffs do not specifically allege that similarly situated heterosexual employees were treated differently, the timing of Mr. Joya Diaz's firing immediately following his disclosure of his sexual orientation is sufficient to support plaintiffs' allegations of discrimination without corroborating comparator evidence. *See Bryant v. Aiken Reg'l Med. Ctr.*, 333 F.3d 536, 545–46 (4th Cir. 2003). For these reasons, the undersigned recommends a finding that defendant violated Title VII's prohibition on sexual orientation discrimination when it fired Mr. Joya Diaz.

### b. *Defendant's Termination of Ms. Joya Diaz*

As alleged in the complaint, defendant violated Title VII when it terminated Ms. Joya Diaz in retaliation for her protest regarding defendant's unlawful termination of Mr. Joya Diaz.

(Compl. ¶¶ 57–65). Title VII prohibits discrimination against an employee because of the employee's opposition to "any practice made an unlawful employment practice" under the statute. 42 U.S.C. § 2000e-3(a). To prove retaliation in violation of Title VII, a plaintiff must establish: (1) participation in a protected activity, (2) the existence of an adverse employment decision, and (3) a causal link between the first two factors. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015).

Plaintiffs have established defendant's violation of Title VII as to Ms. Joya Diaz. Plaintiffs allege that Ms. Joya Diaz "voiced outrage and protest" to defendant for its unlawful discrimination and termination of Mr. Joya Diaz's employment because of his sexual orientation. (Compl. ¶¶ 40, 43–44). Plaintiffs have demonstrated that Ms. Joya Diaz was subject to an adverse employment decision when her employment was terminated on February 6, 2021. (Compl. ¶¶ 39, 45). Finally, plaintiffs have alleged that defendant terminated Ms. Joya Diaz's employment "immediately (within minutes or, at most, hours)" after she engaged in protected activity. (Compl. ¶ 45). Such a short timeframe is sufficient to support the inference of a causal link between Ms. Joya Diaz's protected protest and the termination of her employment. *See Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017). For these reasons, the undersigned recommends a finding that defendant violated Title VII's prohibition on retaliation when it fired Ms. Joya Diaz.

## Damages

### I. FLSA Damages

Plaintiffs are entitled to unpaid overtime wages and statutory liquidated damages pursuant to the FLSA. The FLSA provides that an employee is entitled to an overtime wage for each hour worked over forty in a workweek of not less than one and one-half the employee's

regular rate. 29 U.S.C. § 207(a). An employer that violates the FLSA is liable to the employees affected for any unpaid overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Mr. Joya Diaz is entitled to unpaid overtime wages of $676. Mr. Joya Diaz alleges that he worked approximately fifty-three (53) hours per week from December 9, 2020 to February 6, 2021. (Compl. ¶¶ 19–21). Mr. Joya Diaz claims that he was paid an hourly rate of $13. (Compl. ¶ 22). Defendant is therefore liable for $676 in unpaid overtime wages as to Mr. Joya Diaz ($6.50 [overtime premium wage] multiplied by 13 [overtime hours worked per week] multiplied by 8 [weeks worked without overtime pay]).

Ms. Joya Diaz is entitled to unpaid overtime wages of $1,657.50. Ms. Joya Diaz alleges that she worked approximately fifty-three (53) hours per week from October 2020 to February 6, 2021. (Compl. ¶¶ 25–27; *see also* Ms. Joya Diaz Decl. ¶ 13). Ms. Joya Diaz claims that she was paid an hourly rate of $15. (Compl. ¶ 28). Defendant is therefore liable for $1,657.50 in unpaid overtime wages as to Ms. Joya Diaz ($7.50 [overtime premium wage] multiplied by 13 [overtime hours worked per week] multiplied by 17 [weeks worked without overtime pay]).

Plaintiffs are also entitled to an award of statutory liquidated damages in an amount equal to their unpaid overtime wages. The court may decline to award the otherwise mandatory liquidated damages if the employer demonstrates that its failure to pay overtime wages was in good faith and based on "reasonable grounds for believing that [the] act or omission was not a violation of the [FLSA]." *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011) (quoting 29 U.S.C. § 260). Defendant has failed to appear or present any defense to plaintiffs' FLSA claims. In their declarations in support of their motion for default judgment, plaintiffs allege that defendant indicated its awareness of the overtime law but that it did not pay premium

overtime wages to employees and that plaintiffs were told to work elsewhere if they did not like the policy. (Mr. Joya Diaz Decl. ¶ 19, Ms. Joya Diaz Decl. ¶ 19). For these reasons, an award of liquidated damages equal to the amount of unpaid overtime wages is appropriate.

As detailed above, the undersigned recommends that Mr. Joya Diaz be awarded $1,352 in damages for his FLSA claim ($676 in unpaid overtime wages and $676 in statutory liquidated damages). The undersigned further recommends that Ms. Joya Diaz be awarded $3,315 in damages for her FLSA claim ($1,657.50 in unpaid overtime wages and $1,657.50 in statutory liquidated damages).

## II.  Title VII Damages

Plaintiffs are entitled to back pay and compensatory damages pursuant to Title VII. Courts frequently award back pay to prevailing Title VII plaintiffs to promote the statute's goals of promoting equal employment opportunities and remedying harms caused by discrimination. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 651 (4th Cir. 2002). Back pay is calculated at the wage rate that the plaintiff would have continued receiving but for the unlawful termination and is reduced by "[i]nterim earnings or amounts earnable with reasonable diligence." *See* 42 U.S.C. § 2000e-5(g)(1); *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 389 (D. Md. 1997). Plaintiffs may also seek compensatory damages, which are capped at different levels depending on the size of the employer. *See* 42 U.S.C. § 1981a(b)(3).

Mr. Joya Diaz is entitled to backpay in the amount of $6,961.50. In his declaration submitted with plaintiffs' motion for default judgment, Mr. Joya Diaz claims that he was unable to secure gainful employment for approximately nine (9) weeks after his termination. (Mr. Joya Diaz Decl. ¶ 35). Based on Mr. Joya Diaz's hourly rate of $13 while employed by defendant, defendant is liable for $6,961.50 in backpay ($4,680 ($13 [hourly wage] multiplied by 40 [non-

overtime hours per week] multiplied by 9 [weeks without interim earnings]) plus $2,281.50 ($19.50 [overtime premium wage] multiplied by 13 [overtime hours worked per week] multiplied by 9 [weeks without interim earnings])).

Ms. Joya Diaz is entitled to backpay in the amount of $8,032.50. In her declaration submitted with plaintiffs' motion for default judgment, Ms. Joya Diaz claims that she was unable to secure gainful employment for approximately nine (9) weeks after her termination. (Ms. Joya Diaz Decl. ¶ 33). Based on Ms. Joya Diaz's hourly rate of $15 while employed by defendant, defendant is liable for $8,032.50 in backpay ($5,400 ($15 [hourly wage] multiplied by 40 [non-overtime hours per week] multiplied by 9 [weeks without interim earnings]) plus $2,632.50 ($22.50 [overtime premium wage] multiplied by 13 [overtime hours worked per week] multiplied by 9 [weeks without interim earnings])).

In addition to back pay, plaintiffs each seek an award of $250,000 in compensatory damages for their Title VII claims. (Docket no. 8 at 15). In their complaint, plaintiffs allege that defendant employed between twenty-five (25) and fifty (50) employees during the relevant period. (Compl. ¶ 5). As plaintiffs concede, this limits defendant's statutory liability for compensatory damages to $50,000. *See* 42 U.S.C. § 1981a(b)(3)(A). Plaintiffs each seek a maximum award of $50,000 in compensatory damages based on their "substantial emotional and related damages." (Docket no. 8 at 15).

Plaintiffs have not offered sufficient evidence in support of their request for an award of maximum compensatory damages. The Fourth Circuit has cautioned that awards of compensatory damages based on emotional distress should be closely examined, particularly when the supporting evidence consists entirely of the plaintiffs' own statements. *See Hetzel v. Cnty. of Prince William*, 89 F.3d 169, 171–73 (4th Cir. 1996). Conclusory statements of

13

emotional distress will be insufficient alone to support a maximum award of compensatory damages. *See Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1254 (4th Cir. 1996) (finding that a plaintiff's testimony "must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated"). In support of their motion for default judgment, plaintiffs' declarations state only that defendant caused them to suffer "humiliation, periods of grief and sadness, embarrassment, anger, loss of enjoyment of life, helplessness, loss of happiness, loss of sleep, loss of appetite, generalized fear, loss of interest in social interactions, anxiety, and stress, fear, and anxiety of providing for [themselves] financially without wages from [their jobs]." (Mr. Joya Diaz Decl. ¶ 36, Ms. Joya Diaz Decl. ¶ 34). Plaintiffs provided no supporting documentation in the form of medical records, third party affidavits, or any other evidence to support their claims of emotional distress. In addition, plaintiffs do not allege that they have experienced severe or chronic distress or that they have required or undergone treatment for their alleged injuries. Considering the serious nature of defendant's misconduct and the limited evidence supporting plaintiffs' claims of emotional distress, the undersigned finds that an award of $5,000 in compensatory damages for each plaintiff is appropriate.

As detailed above, the undersigned recommends that Mr. Joya Diaz be awarded $11,961.50 in damages for his Title VII claim ($6,961.50 in back pay and $5,000 in compensatory damages). The undersigned further recommends that Ms. Joya Diaz be awarded $13,032.50 in damages for her Title VII claim ($8,032.50 in back pay and $5,000 in compensatory damages).

### III.   Attorney's Fees and Costs

Plaintiffs also seek an award of attorney's fees and costs in this action. (Compl. at 11; Docket no. 8 at 16–18). The FLSA provides for a mandatory award of reasonable attorney's fees

and costs to a prevailing plaintiff. *See* 29 U.S.C. § 216(b) ("The court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The court also has discretion to award attorney's fees and costs to a prevailing party in a Title VII action. *See* 42 U.S.C. § 2000e-5(k). Under the lodestar method for determining attorney's fees, the court identifies a reasonable hourly rate and multiplies that rate by the reasonable number of hours worked. *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). In determining reasonableness, the court may consider these factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). The party moving for attorney's fees has the burden of establishing the reasonableness of the rate. *See Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

As to the calculation of a reasonable hourly rate, plaintiffs argue that the court should rely on the *Vienna Metro* matrix, in line with other courts in this jurisdiction. (Docket no. 8 at 17–18). The *Vienna Metro* matrix establishes ranges of reasonable fee rates based on counsel's years of experience, which tends to account for *Barber* factors (3) the required skill, (5) the customary fee for like work, (9) the attorney's experience, and (12) attorney's fee awards in similar cases. *See Gomez v. Seoul Gool Dae Gee Inc.*, 434 F. Supp. 3d 381, 385 (E.D. Va. 2020). In a declaration submitted with plaintiffs' motion for default judgment (Docket no. 8-3)

15

("Greenberg Decl."), counsel Gregg C. Greenberg states that he has been licensed to practice law since 2007, that his law practice has concentrated entirely on representing individuals and classes of individuals in employment claims with a focus on prosecuting state and Federal wage and hour claims, and that his customary billing rate is $400 per hour. (Greenberg Decl. ¶¶ 2, 7–8). Plaintiffs argue that their award of attorney's fees should be calculated at $520 per hour, the lowest end of the billing rate for counsel's *Vienna Metro* category. (Docket no. 8 at 18); *see also Gomez*, 434 F. Supp. 3d at 385 (noting that the appropriate hourly rate for 11–19 years of experience is $520–770). Plaintiffs' proposed billing rate is reasonable and supported by other *Barber* factors. As counsel notes, plaintiffs' claims are primarily, if not exclusively, supported by testimonial evidence, and plaintiffs do not appear to have substantial documented evidence of their claims. (Greenberg Decl. ¶¶ 16, 20). Despite the apparent difficulties with prosecuting this case, counsel agreed to represent plaintiffs on a contingency fee basis. (Greenberg Decl. ¶ 21). The combined potential difficulty of prosecuting the case and the risk of little to no recovery likely made the case undesirable to many practitioners. *See Barber*, 577 F.2d at 226 n.28 (factors (6) and (10)). For these reasons, the undersigned recommends a finding that counsel's proposed hourly rate of $520 is reasonable and appropriate.

As to the reasonableness of the number of hours worked on this case, plaintiffs' counsel has submitted an itemized and detailed fee summary demonstrating the scope of the work completed. (Greenberg Decl. at 5–6). Counsel represents that he "audited and reviewed the billing records" and "cut any duplicative or improperly billed work performed" prior to filing. (*Id.* at 4). Plaintiffs seek attorney's fees for 25.2 total billing hours accrued between February 10, 2021 and May 5, 2022. (*Id.* at 5–6). Recognizing that the claims at issue in this case are not particularly complex and that counsel did not need to expend a significant amount of time or

resources on this matter, the undersigned nevertheless recommends a finding that the number of hours worked on this case was reasonable. Counsel's declaration demonstrates that he handled this case—which involved two separate plaintiffs and both FLSA and Title VII claims—in its entirety, from the initial consultation, through EEOC administrative review, filing in district court, and ultimately through default judgment proceedings. (*Id.*). Counsel's representation that he expended 25.2 hours is in line with other FLSA cases resolved at early stages in litigation. *See Gomez*, 434 F. Supp. 3d at 384–87 (finding attorney billing statement reflecting 36.3 hours of work to be reasonable where case was settled shortly after defendant filed its answer). For these reasons, the undersigned recommends a finding that counsel's submission of 25.2 total billing hours is reasonable and appropriate.

Plaintiffs also seek an award of costs in this action. Counsel's summary of litigation expenses reflects the $402 filing fee and a $70 expense for plaintiffs' process server. (Greenberg Decl. at 6). The undersigned recommends a finding that these expenses are reasonable and appropriate.

For these reasons, the undersigned recommends that plaintiffs be awarded $13,104 in attorney's fees ($520 [hourly rate] multiplied by 25.2 [hours worked]) and $472 in costs.

## Conclusion

For these reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of plaintiff Ricardo Joya Diaz and against defendant RM Contractor, LLC in the amount of **$13,313.50** ($676 in unpaid overtime wages and $676 in statutory liquidated damages for his FLSA claim, and $6,961.50 in back pay and $5,000 in compensatory damages for his Title VII claim). The undersigned further recommends that a default judgment be entered in favor of plaintiff Diana Joya Diaz and against defendant RM Contractor, LLC in the amount

of **$16,347.50** (($1,657.50 in unpaid overtime wages and $1,657.50 in statutory liquidated damages for her FLSA claim, and $8,032.50 in back pay and $5,000 in compensatory damages for her Title VII claim). Finally, the undersigned recommends that plaintiffs be awarded **$13,104** in attorney's fees and **$472** in costs.

### Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to defendant RM Contractor, LLC c/o Oscar Rene Marquez Lopez at 16617 Dumfries Road, Dumfries, Virginia 22025, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations, and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Entered this 17th day of June, 2022.

                                                                                      /s/ JFA
                                                              John F. Anderson
                                                              United States Magistrate Judge

Alexandria, Virginia